PETER S. DICKINSON (SBN 139495)
pdickinson@bushgottlieb.com
DAVID E. AHDOOT (SBN 245133)
dahdoot@bushgottlieb.com
KIRK M. PRESTEGARD (SBN 291942)
kprestegard@bushgottlieb.com
BUSH GOTTLIEB
A Law Corporation
500 North Central Avenue, Suite 800
Glendale, California 91203-3345
Telephone: (818) 973-3200
Facsimile: (818) 973-3201

Attorneys for Plaintiffs DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN AND DIRECTORS OF THE MOTION PICTURE INDUSTRY HEALTH PLAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN AND DIRECTORS OF THE MOTION PICTURE INDUSTRY HEALTH PLAN,<br><br>Plaintiffs,<br><br>vs.<br><br>NU IMAGE, INC., a California corporation,<br><br>Defendant. | CASE NO.<br><br>**COMPLAINT FOR BREACH OF LMRA SECTION 301 CONTRACTS AND TO RECOVER UNPAID CONTRIBUTIONS PURSUANT TO THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974**<br><br>[29 U.S.C. §§ 185, 1132(g)(2) and 1145] |

Plaintiffs Directors of the Motion Picture Industry Pension Plan and Directors of the Motion Picture Industry Health Plan allege:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, § 502(e)(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") [29 U.S.C. § 1132(e)(1)] and § 301(a) of the Labor Management Relations Act ("LMRA") [29 U.S.C. § 185(a)]. This is an

562574.6 11011-26025

COMPLAINT

1. action by the Directors of the Motion Picture Industry Pension Plan and the Directors of the Motion Picture Industry Health Plan (collectively, "Directors") based on the failure and refusal of Defendant Nu Image Inc. ("Defendant" or "Nu Image") to make contributions to the Motion Picture Industry Pension Plan and the Motion Picture Industry Health Plan (the "Plans") as required by the terms of collective bargaining agreements between Nu Image and labor organizations and as required by the terms of trust agreements governing the Plans, pursuant to § 515 of ERISA [29 U.S.C. § 1145], as amended by § 306(a) of the Multi-Employer Pension Plan Amendments (MPRA) Act of 1980, P.L. 96-364.

2. Such jurisdiction exists without respect to the amount in controversy or the citizenship of the parties, as provided in § 502(f) of ERISA [29 U.S.C. § 1132(f)] and § 301(a) of the LMRA [29 U.S.C. § 185(a)].

3. Venue is based on the location of the office in which the Plans are administered, which is located in the Central District of California. As such, venue is appropriate pursuant to § 502(e)(2) of ERISA [29 U.S.C. § 1132(e)(2)].

## PARTIES

4. The Plans are "employee welfare benefit plans" and "employee pension benefit plans" within the meaning of § 3(1) and (2)(A) of ERISA [29 U.S.C. § 1002(1) and (2)(A)] in that they were created pursuant to written declarations of trust ("Declarations of Trust") between the International Alliance of Theatrical Stage Employees ("IATSE") and certain other applicable labor organizations, and motion picture and television producer employers ("Producers"), and are maintained for the purpose of providing their participants and beneficiaries with medical, surgical and hospital benefits in the event of sickness, accident, disability or death, and retirement benefits. The Plans were created and now exist pursuant to § 302(c) of the LMRA [29 U.S.C. § 186(c)].

5. The Directors are "fiduciaries" within the meaning § 3(21)(A) of ERISA [29 U.S.C. § 1002(21)(A)], half of whom have been appointed by the

1  Producers and half of whom have been appointed by IATSE; International
2  Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,
3  Local 399; and other applicable labor organizations (collectively, the "Unions").
4  The Directors administer the assets of the Plans and have an obligation to protect the
5  assets of the Plans, including ensuring that employers properly remit pension and
6  health contributions to the Plans as required under collective bargaining agreements
7  between the Unions and Nu Image. Under the Declarations of Trust the Directors
8  have control and authority over the Plans, including the authority to file actions such
9  as the present case, to protect the assets of the Plans.

10       6.   The Plans are "multi-employer plans" within the meaning of § 3(37)(A)
11  of ERISA [29 U.S.C. § 1002(37)(A)] in that more than one employer is required to
12  contribute to the Plans and the Plans are maintained pursuant to collective
13  bargaining agreements between the Unions and multiple motion picture and
14  television producers.

15       7.   At all times material herein, the Unions have been labor organizations
16  representing employees in the motion picture and television business, which is an
17  industry affecting commerce within the meaning of § 302 of the LMRA [29 U.S.C.
18  § 186].

19       8.   At all times relevant herein, Nu Image is and has been a corporation
20  organized and existing under the laws of the State of California, with its principal
21  place of business in the State of California, and is an "employer" within the meaning
22  of § 3(5) of ERISA [29 U.S.C. § 1002(5)] and § 501 of the LMRA [29 U.S.C. §
23  142]. As such, Nu Image is also an "employer" as that term is used in § 301(a) of
24  the LMRA [29 U.S.C. § 185(a)].

## COMMON FACTS

26       9.   At all times relevant herein, Nu Image has been a party to a series of
27  written agreements with the IATSE (the "Guarantee Agreements") pursuant to
28  which Nu Image agreed that if it made a motion picture using one of its controlled

562574.6 11011-26025                             3
                                           COMPLAINT

production entities ("Controlled Entity"), Nu Image would cause the Controlled Entity to sign the then-current IATSE-Producer Basic Agreement ("Basic Agreement"). Pursuant to the Guarantee Agreements, Nu Image also agreed to guarantee the obligations of its Controlled Entity under the Basic Agreement, including, but not limited to, the obligation to pay the contributions to the Plans required by Articles XIX and XXVIII of the Basic Agreement.

10. Nu Image has also been a party to signed, written trust acceptances and agreements of consent (collectively, the "Trust Agreements") in which Nu Image agreed to be bound to the terms of the Declarations of Trust governing the Plans. In addition to the Basic Agreement and the Trust Agreements, Nu Image and/or certain Controlled Entities have since executed various motion picture-specific agreements with the IATSE and with the Studio Transportation Drivers Local 399, Theatrical Teamsters Local 817, and other Unions affiliated with the Plans (generally, "Project Agreements") and related Plans agreements, confirming that the terms and conditions of the Guarantee Agreement, Basic Agreement and Trust Agreements (collectively with the Project Agreements, "Plan Signatory Documents") remained effective at all relevant times herein.

11. At all times relevant herein, Nu Image and its Controlled Entities produced and/or distributed motion pictures subject to the Plan Signatory Documents (collectively, "Pictures"), including, but not limited to:

- *As I Lay Dying*
- *Cool Dog*
- *Drive Angry*
- *Expendables 2, The*
- *Homefront*
- *Iceman, The*
- *Killing Season* aka *Shrapnel*
- *Leaves of Grass*

- *Lovelace*
- *Mechanic, The*
- *Olympus Has Fallen*
- *Paperboy, The*
- *Playing For Keeps*
- *Stolen* aka *The Medallion*
- *Stone*
- *Straight A's*
- *Texas Chainsaw 3D*
- *Trespass*
- *Trust*

12. Pursuant to the Plan Signatory Documents, the Controlled Entities and Nu Image are under an obligation to make certain monetary contributions to the Plans based upon a percentage of the gross receipts derived from exploitation of the Pictures in the Free Television market and in the "Supplemental Markets" (including, but not limited to, pay television, videocassettes and DVDs), collectively referred to herein as "Residual Contributions."

13. The Directors are informed and believe, and thereon allege, that Nu Image has entered into written agreements with certain territorial distributors of the Pictures, pursuant to which those territorial distributors are licensed to exhibit the Pictures in certain domestic and foreign countries in markets including, but not limited to, motion picture theaters (the "Theatrical Market"), the free television market, and the Supplemental Markets of pay television and DVD/videocassettes. The Plans are informed and believe, and thereon allege, that pursuant to these written agreements, Nu Image received payments from these territorial distributors, in the nature of lump sum advances and/or minimum guarantees, in consideration of the license of these distribution rights of the Pictures. Pursuant to the Plan

Signatory Documents, Nu Image must make a reasonable allocation of such payments between the various markets in order to make the Residual Contributions.

14. The Directors are informed and believe, and thereon allege, that the Controlled Entities and Nu Image have breached the Plan Signatory Documents by failing to report and make correct Residual Contributions as to each of the Pictures in amounts to be proven at trial.

15. Pursuant to the Basic Agreement, the Plans have offered to arbitrate with Nu Image disputes concerning allocation, but Nu Image has previously refused such an offer and otherwise failed to timely respond. Accordingly, Nu Image has waived any right, if any, to arbitration of allocation disputes.

## FIRST CAUSE OF ACTION

(Failure to Make Pension and Health Contributions – Breach of Plan Signatory Documents, Violation of § 515 of ERISA (29 U.S.C. § 1145))

16. The Directors incorporate by reference each allegation contained in Paragraphs 1 through 15 as though fully set forth herein.

17. Pursuant to the Plan Signatory Documents, Nu Image is responsible for complying with all terms and conditions of the Plan Signatory Documents with respect to the Pictures, including, but not limited to, the payment of Residual Contributions for the Pictures.

18. Based on an audit of Nu Image books and records, he Directors are informed and believe, and thereon allege, that Nu Image has not paid sufficient Residual Contributions to the Plans with respect to any of the Pictures, thus necessitating this litigation.

19. By the terms of the Plan Signatory Documents, and as provided by 29 U.S.C. § 1132(g)(2), Nu Image agreed that in the event it failed to pay Residual Contributions to the Plans when due, it would be considered delinquent with the Plans and would pay the Plans the greater of the sum of twenty percent (20%) of the total amount then due, or interest on the amount due at the rate of one percent (1%)

per month, commencing ten (10) business days after notice of the claim, as liquidated damages for each delinquency. The Plans are informed and believe, and thereon allege, that liquidated damages are due to the Plans by Nu Image in an amount to be established by proof at trial.

20. By the Plan Signatory Documents, Nu Image also agreed that in the event of any delinquency it would pay legal and auditing costs in connection therewith, whether before or after litigation is commenced. The Plans have incurred legal and auditing costs in conjunction with Nu Image's failure to make Residual Contributions for the Pictures, in an amount to be determined at trial.

21. It has been necessary for the Plans to engage the law firm of Bush Gottlieb, A Law Corporation for the purpose of collecting any and all Residual Contributions due from Nu Image to the Plans with respect to the Pictures. Pursuant to the Plan Signatory Documents and 29 U.S.C. § 1132(g)(2), the Plans are entitled to their reasonable attorneys' fees and costs in connection therewith.

22. Pursuant to the Plan Signatory Documents and 29 U.S.C. § 1132(g)(2), Nu Image owes the Plans interest at the rate of one percent (1%) per month on all unpaid Residual Contributions for the Pictures in the manner provided by the Basic Agreement. The Plans are informed and believe, and thereon allege, that interest is due to the Plans by Nu Image in an amount to be established by proof at trial.

23. At all times material herein, Nu Image was under an affirmative duty, pursuant to the terms of the Plan Signatory Documents, to provide the Directors, their agents, and the Plans with information so that they may determine whether Residual Contributions paid were proper, and to pay to the Plans the correct amount of Residual Contributions. The Plans are informed and believe, and on that basis allege, Nu Image failed to accurately report this information and pay the proper Residual Contributions as to each of the Pictures. The Plans reposed trust and confidence in Nu Image and relied on Nu Image to accurately report and pay the

correct amount of Residual Contributions to the Plans so as to toll the statute of limitations, if applicable.

## SECOND CAUSE OF ACTION

(Violation of § 301(a) of LMRA [29 U.S.C. § 185(a)])

24. The Directors incorporate by reference each allegation contained in Paragraphs 1 through 23 as though fully set forth herein.

25. The Plans are intended third party beneficiaries of the Plan Signatory Documents between the IATSE on the one hand, and Nu Image and its Controlled Entities on the other.

26. Nu Image and its Controlled Entities have breached the Plan Signatory Documents by failing to make a reasonable allocation of payments they received from distributors with respect to the Pictures and by failing to make sufficient Residual Contributions with respect to the Pictures.

27. As a result of these breaches of the Plan Signatory Documents, the Plans have suffered damages, including, but not limited to, unpaid Residual Contributions, interest, liquidated damages, attorneys' fees, and audit fees in an amount to be established at trial.

## PRAYER FOR RELIEF

WHEREFORE, the Plans pray for judgment against Nu Image, a California corporation, as follows:

1. For unpaid Residual Contributions to the Plans in an amount to be established at trial;

2. For liquidated damages in an amount to be established at trial;

3. For interest at the rate of one percent per month on all unpaid Residual Contributions in an amount to be established at trial;

4. For reasonable attorneys' fees and costs incurred by the Plans;

/ / /

/ / /

5. For costs of the audit in amounts to be proved at trial; and

6. For such additional relief as this Court deems just and proper.

DATED: _____    BUSH GOTTLIEB, A Law Corporation

By: _____
DAVID E. AHDOOT
Attorneys for Plaintiffs
Directors of the Motion Picture Industry
Pension Plan and Directors of the Motion
Picture Industry Health Plan